(No. 75-CV-94—

In Re Application of Peter Pippas.

*Opinion filed October 23, 1975.*

Leonard F. Amari, Attorney for Claimant.

William J. Scott, Attorney General of Illinois; Kenneth Mason, Assistant Attorney General.

Per Curiam.

Claimant seeks compensation for alleged loss of earnings, medical bills, and hospital bills. He has submitted his claim pursuant to the provisions of the "Crime Victims Compensation Act," Ill.Rev.Statutes 1973, Chapter 70, Section 70, 71, et seq. (hereafter referred to as the "Act").

Evidence was taken by the Court at a hearing conducted by Martin C. Ashman, a Commissioner of this Court.

The only contested issues before the Court is the extent and duration of the Claimant's disability and the amount of lost earnings, if any.

The Claimant was the manager of a restaurant and bar located at 504 West Van Buren, Chicago, Illinois,

which business was owned by the Post Stop Inc., a corporation. The Claimant was an officer of the corporation and held some stock in the corporation.

On February 7, 1974, at about 2:05 a.m., the Claimant, age 44, was in the process of closing his business at that address. One of the employees of the business stepped outside of the premises to look for a cab when he was forced inside by three armed persons. While a pistol was held at the Claimant's back, the Claimant was beaten on the top of his head with a pipe at least three times and once in the forehead and was knocked unconscious. He was shot on his right side.

The Chicago police responded to a call for aid. The Claimant was taken by the police to the Cook County Hospital for emergency surgery. The Claimant was hospitalized from February 7, 1974, to February 17, 1974. During that time, an exploratory laparotomy was performed in treatment of the bullet wound in the upper quadrant of the abdomen. The surgery was unsuccessful in removing the bullets and the Claimant still has one or more bullets in his body.

The Claimant testified that he still has pain in the abdomen, on occasions has difficulty in breathing, cannot walk very far, and still has spells of dizziness. He exhibits a scar on his forehead extending beyond the hair line.

Claimant still visits the doctor on occasion and takes medication to relieve his symptoms of headaches or dizziness. Because of his dizziness he is unable to walk more than one or two blocks. He testified that he has not been back to work since the incident and has not been employed nor sought employment since the incident of February 7, 1974.

At the time of the incident he had been earning $125.00 per week.

On cross-examination the Claimant stated that he has trouble sleeping nights because of bad dreams. He feels like someone is hitting him. He is afraid all of the time and wakes up in the morning feeling afraid. He is afraid to go out at night.

He has fallen down on the street from his headaches. He feels weak when he thinks about the incident that caused him his problems. Many times he gets headaches and dizziness when thinking about the incident.

The Claimant's medical evidence consisted of the testimony of Dr. Elia Stambolis who testified as to the history he took from the Claimant which was essentially the same as the Claimant's testimony in Court.

The doctor's examination on February 21, 1974, revealed healed surgical wounds in the abdomen. The patient complains of headaches in the back of his head, dizziness and lost memory. He passes out from dizzy spells. He has difficulty in breathing. In the opinion of the doctor he considered that the Claimant's condition was permanent by reason of there having been no improvement after one and a half years after the incident.

On cross-examination the doctor admitted that he had not taken any encephalograph tests. The doctor also admitted that the eye motion reflexes were normal and that the motor reflexes were normal and there was no way of telling whether the patient was a malingerer. There were no objective symptoms found by the doctor to account for the Claimant's persistent complaints. He diagnosed the Claimant's condition as a post cerebral concussion syndrome but had no objective findings upon which to base this diagnosis. He considered the Claimant permanently unemployable despite the lack of objective evidence.

The Respondent argues to the Court that although it

is clear that the Claimant lost some time from work, he cannot be compensated for more than a fairly minimal period of time because he was unable to establish by objective evidence that it was necessary for him to stay away from work for any extended period of time. The Respondent further argues that it is fear of returning to work rather than a physical disability that prevents the Claimant from returning to gainful employment.

It is the opinion of this Court that the Claimant did establish by a preponderance of the evidence that it was necessary for him to absent himself from work for an extended period of time.

His injury was quite severe and he still carries bullets within his body. While his doctor could find no objective evidence which could account for the Claimant's ailments, the doctor did not take all of the tests that were available to the medical profession to ascertain the cause of these ailments. In fact the doctor's tests were minimal. However, it was clear from the doctor's testimony that the doctor considered his patient completely unemployable.

The Court having heard the testimony of the Claimant and having observed his manner in court cannot disbelieve his testimony. His ailments were obviously real and manifested itself in physical ways which prohibited him from working.

Accordingly, this Court finds as follows:

1. That the Claimant was a victim of a violent crime, as defined in Section 2(c) of the Act, to wit: "Aggravated Battery", (Ill.Rev.Stat., 1973, Ch. 38, Sec. 12-4).

2. That there was no evidence of any provocation by the Claimant for the attack upon him.

3. That there was no evidence that the victim and

his assailants were related or sharing the same household.

4. That the criminal offense was promptly reported to law enforcement officials, and the Claimant has fully cooperated with their requests for assistance.

5. That the Claimant's injuries were not attributable to the Claimant's wrongful act or substantial provocation of his assailants.

6. That the Claimant has received no insurance benefits of any kind nor is he entitled to any insurance benefits of any kind as reimbursement of any of his expenses.

7. That the Claimant incurred medical and hospital expenses as follows:

| | |
|---|---|
| Medical | $ 326.00 |
| Hospital | $1,720.00 |
| Total: | $2,046.00 |

8. That the Claimant was unable to work during the period of February 7, 1974, to September 7, 1975, a period of 19 months, as a result of his injuries; that the sustained loss of earnings during this period is in the amount of $10,291.66.

The Act provides in Section 4 as follows:

Loss of earnings, loss of future earnings, and loss of support shall be determined on the basis of the victim's average monthly earnings for the six months immediately preceding the date of the injury or on $500.00 per month, whichever is less.

The amount of actual loss of earnings sustained by the Claimant is more than $500.00 per month. In accordance with Section 4 of the Act, the $500.00 per month limit is controlling. The total compensable loss of earnings sustained by the Claimant is $9,500.00.

9. That based on the aforementioned calculations, the Claimant's total pecuniary loss is as follows:

| Hospital | $ 1,720.00 |
|---|---|
| Medical | 326.00 |
| Loss of Earnings | 9,500.00 |
| Total: | $11,546.00 |

That after deducting $200.00 pursuant to Section 7(d) of the Act, the Claimant's pecuniary loss is $11,346.00.

The Claimant is therefore entitled to the maximum award under the Act which is $10,000.00.

It Is Hereby Ordered that the sum of $10,000.00 be awarded the Claimant Peter Pippas, an innocent victim of violent crime.

It Is Further Ordered that the sum of $1,000.00 is reasonable considering the time invested by counsel and that therefore Lupel & Amari, attorneys for the Claimant, may charge said amount to the Claimant pursuant to Section 12 of the Act.